UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTORIA KENNEDY, on behalf of herself and all others similarly situated,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>EL CENTRO REGIONAL MEDICAL CENTER, a municipal hospital; and DOES 1 through 100, inclusive,<br><br>　　　　　　　　　　　　Defendant. | Case No.: 22-CV-1522 JLS (LR)<br><br>**ORDER (1) APPROVING THE PARTIES' JOINT STIPULATION; AND (2) DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT**<br><br>(ECF Nos. 20, 21) |

　　　　Presently before the Court is (1) the Parties' Joint Stipulation to Dismiss Third Amended Complaint's Class and Collective Claims Without Prejudice and Plaintiff's Individual Claims with Prejudice ("Joint Stip.," ECF No. 21) and (2) Defendant El Centro Regional Medical Center's Motion to Dismiss Plaintiff's Third Amended Complaint ("MTD," ECF No. 20). Having carefully considered the Parties' arguments and the law, the Court **APPROVES** the Joint Stipulation and **DENIES** the MTD as **MOOT**.

## BACKGROUND

　　　　Plaintiff Victoria Kennedy filed the instant wage-and-hour case on May 23, 2022, in the Superior Court of California, County of Imperial, asserting a series of California state law causes of action on behalf of a putative class. *See* Notice Removal ("NOR") ¶ 1, ECF

No. 1. On September 22, Plaintiff filed a Second Amended Complaint ("SAC," ECF No. 1-4), which added a collective claim pursuant to the federal Fair Labor Standards Act ("FLSA"). *Id.* ¶¶ 1–2. In response, Defendant removed the action to federal court. *See generally id.*

On March 29, 2023, the Court (1) partially dismissed the SAC and (2) struck select allegations from the SAC. *See* ECF No. 12. The Parties then jointly moved for a stay pending mediation, *see* ECF No. 13, and the Court stayed the case until December 5, 2023. *See* ECF No. 14. Following mediation, the Court extended the stay until March 7, 2024, to allow the Parties to finalize their settlement. *See* ECF Nos. 16, 19. Settlement efforts stalled, however, and Plaintiff filed a Third Amended Complaint ("TAC," ECF No. 18).

In the TAC, Plaintiff brings multiple state law claims on behalf of a putative class and seeks to certify a FLSA collective action. TAC ¶¶ 1, 30–40. Plaintiff alleges Defendant both (1) rounded down Plaintiff's hours worked and (2) failed to compensate Plaintiff for time spent in COVID-19 screenings. *Id.* ¶¶ 18–24. After additional efforts at settlement, Defendant moved to dismiss all claims in the TAC.

Approximately two weeks after Defendant filed its MTD, the Parties filed the Joint Stipulation. The Parties indicate that they have "negotiated a settlement agreement for Plaintiff's individual claims." Joint Stip. at 2. The Parties therefore stipulate to (1) dismiss the class and collective claims in the TAC without prejudice and (2) dismiss Plaintiff's individual claims in the TAC with prejudice. *Id.* The Parties request that the Court retain jurisdiction to enforce the settlement agreement. *Id.* at 3. They do not, however, ask the Court to review and approve their settlement prior to dismissal.

## LEGAL STANDARD

Rule 41(a)(1)(A) allows a plaintiff to "dismiss an action without a court order by filing: (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A). The Ninth Circuit has interpreted Rule 41(a)(1)(A)(i) to confer upon plaintiffs an "'absolute right' . . . to dismiss an action." *Am.*

*Soccer Co. v. Score First Enters.*, 187 F.3d 1108, 1110 (9th Cir. 1999). Indeed, "once a notice of voluntary dismissal is filed, the district court in which the action is pending loses jurisdiction and cannot exercise discretion with respect to the terms and conditions of the dismissal." *Com. Space Mgmt. Co. v. Boeing Co.*, 193 F.3d 1074, 1076 (9th Cir. 1999). The same is true with respect to a stipulation of voluntary dismissal pursuant to Rule 41(a)(1)(A)(ii). *Black Rock City, LLC v. Pershing Cnty. Bd. of Comm'rs*, 637 F. App'x 488, 488 (9th Cir. 2016) (applying *Commercial Space Management* to a stipulation of voluntary dismissal); *see also Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1278 (11th Cir. 2012); *Adams v. USAA Cas. Ins. Co.*, 863 F.3d 1069, 1078 (8th Cir. 2017). Thus, in most cases, a voluntary dismissal filed pursuant to Rule 41(a)(1) "leaves no role for the court to play." *Am. Soccer Co.*, 187 F.3d at 1110.

Rule 41(a)(1)(A) is, however, "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A). Thus, in certain circumstances—most notably, after a class has been certified, *see* Fed. R. Civ. P. 23(e)—parties to an action may not dismiss said action without court approval.

## DISCUSSION

The Court will first address whether the Parties may dismiss the claims of the putative class without prejudice. Then, the Court will turn to Plaintiff's individual and collective FLSA claims.

### I. Class Claims

Under Rule 23(e), "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Here, no class has been certified. And, though some courts have refused to dismiss even putative class actions without reviewing associated settlements, this Court previously determined that the legislative history of Rule 23 counsels firmly against such review. *See Dougan v. Centerplate, Inc.*, No. 22-CV-1496 JLS (SBC), 2023 WL 8604152, at *3–4 (S.D. Cal. Dec. 12, 2023). As the Ninth Circuit has not yet spoken on the issue—and the Parties do not

urge the Court to reconsider its previous conclusion—the Court will **APPROVE** the Joint Stipulation as to both (1) Plaintiff's individual, state-law claims and (2) the state-law claims of the putative class.

## II. Individual/Collective FLSA Claims

Whether the Court must approve the Parties' settlement of the TAC's FLSA claim turns on whether the FLSA is an "applicable federal statute" under Rule 41(a)(1)(A). *See Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 201 (2d Cir. 2015).

No binding Ninth Circuit precedent has yet resolved this question. *But see Seminiano v. Xyris Enter., Inc.*, 602 F. App'x 682, 683 (9th Cir. 2015) (noting, in an unpublished disposition, that "FLSA claims may not be settled without approval of either the Secretary of Labor or a district court"). In a series of opinions both within and without this Circuit, however, district courts have answered in the negative. *See Evans v. Centurion Managed Care of Arizona LLC*, No. CV-23-00282-PHX-DWL, 2023 WL 5095201, at *3 (D. Ariz. Aug. 9, 2023); *Corbett v. Pub. Emps.' Ret. Sys.*, No. 220CV02149KJDNJK, 2024 WL 518895, at *3 (D. Nev. Feb. 9, 2024); *Picerni v. Bilingual Seit & Presch. Inc.*, 925 F. Supp. 2d 368, 375 (E.D.N.Y. 2013), *abrogated by Cheeks*, 796 F.3d at 201; *Alcantara v. Duran Landscaping, Inc.*, No. 2:21-CV-03947-JDW, 2022 WL 2703610, at *5 (E.D. Pa. July 12, 2022); *Askew v. Inter-Cont'l Hotels Corp.*, 620 F. Supp. 3d 635, 637 (W.D. Ky. 2022). The Court agrees.

"Typically, settlement rests solely in the discretion of the parties, and the judicial system plays no role." *In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020, 1025 (2d Cir. 1992). This "general rule" supports party autonomy, preserves scarce judicial resources, and reflects courts'—and, through Rule 41(a)(1)(A)(ii), Congress's—conclusion that "[p]ublic policy strongly favors settlement of disputes without litigation." *See Evans*, 2023 WL 5095201, at *1 (citing *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 835 (3d Cir. 1995)); *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Because settlement without judicial intervention is the norm, purported exceptions to the rule should not be readily conceded.

In line with the above, the legislative history of Rule 41(a)(1)(A) suggests that "applicable federal statutes" are confined to those which contain express language limiting settlement. The advisory committee's note to Rule 41, when explaining the purpose behind the "applicable federal statutes" language, refers to preserving "[p]rovisions regarding dismissal" in 8 U.S.C. § 1329 and 31 U.S.C. § 3730. *See* Fed. R. Civ. P. 41 advisory committee note to 1937 adoption. These statutes in turn each contain unmistakable language limiting dismissal. *See* 8 U.S.C. § 1329 ("No suit or proceeding for a violation of any of the provisions of this subchapter shall be settled, compromised, or discontinued without the consent of the court in which it is pending . . . ."); 31 U.S.C. § 3730 ("The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."). So too do the Rules carved out of Rule 41(a)(1)(A)'s ambit. *See* Fed. R. Civ. P. 66, 23(e), 23.1(c); 23.2.

The FLSA stands in stark contrast to the above statutes and rules. Its text contains no requirement of court approval prior to dismissal of either individual or collective actions. *See* 29 U.S.C. § 216(b). And "[t]he absence of such a requirement is a strong indication that Congress did not intend it, as it has expressly conditioned dismissals under other statutes upon court approval." *Picerni*, 925 F. Supp. 2d at 375; *see also Alcantara*, 2022 WL 2703610, at *2. Indeed, "[i]f Congress . . . wishes to limit the voluntariness of a dismissal, it knows how to do so." *Askew*, 620 F. Supp. 3d at 639. Thus, FLSA's "text and context suggest Congress did *not* intend to override Rule 41's default." *Id.*

Courts that reject attempted Rule 41(a)(1)(A) dismissals in FLSA actions do so for two reasons.[1] First, they cite to two Supreme Court cases—*Brooklyn Savings Bank* and

---

[1] The Second and Eleventh Circuits require judicial approval of FLSA settlements. *See Cheeks*, 796 F.3d at 206; *Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Lab.*, 679 F.2d 1350, 1353 (11th Cir. 1982). The law in other circuits is "unsettled." *See Evans*, 2023 WL 5095201, at *3; *see also* Keith William Diener, *Judicial Approval of FLSA Back Wages Settlement Agreements*, 35 Hofstra Lab. & Emp. L.J. 25, 53–54 (2017) ("The Eleventh and Second Circuits require judicial supervision of FLSA settlement agreements for back wages; the Fifth Circuit carves out a narrow exception to the supervisory requirement; the Fourth, Seventh, Eighth, and Ninth Circuits have not expressly decided the issue, but have (in dicta)

*Gangi*—which together held that an employee could not waive their right to liquidated damages under the FLSA absent a bona fide dispute as to liability. *See Cheeks*, 796 F.3d at 202–203 (first citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704 (1945); and then citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114 (1946)). Second, they highlight the "unique policy considerations underlying the FLSA"—notably, the risk that employers will wield their unequal bargaining power to eviscerate the FLSA's protections. *See id.* at 205–06. Neither argument is persuasive.

Regarding Supreme Court precedent, "neither *Brooklyn Savings* nor *Gangi* expressly preclude private settlement; they simply refuse to recognize releases in subsequent litigation where the settlement was unreasonable or not the result of a bona fide dispute." *Picerni*, 925 F. Supp. 2d at 375–76. Indeed, "it's one thing to say certain settlements are, or might be, unenforceable. It is something else to say that once a party brings an FLSA suit, the FLSA bars them from taking the risk that their settlement will be unenforceable." *Alcantara*, 2022 WL 2703610, at *4. "If an employer wants to settle the case and take the risk that it may not be enforceable later, Rule 41 lets it do so." *Id.* at *5. Nothing in *Brooklyn Savings* or *Gangi* precludes this result.

Turning to the policy considerations underlying the FLSA, two rejoinders persuade the Court. First, though the Court is mindful of the imbalance in bargaining power between employees and employers—and the associated risk of unfair settlements—requiring court oversight over FLSA settlements comes with its own concerns. As the *Alcantara* court explained:

> *First*, the requirement of court approval slows the resolution of FLSA settlements and, by extension, the payment of wages to plaintiffs. *Second*, the requirement requires lawyers to expend more time and to seek higher fees to resolve small cases. Where possible, the law should avoid forcing lawyers to do work that is disproportionate to the size of the case. *Third*, the requirement forces federal courts to do work that Congress did not require of

---

acknowledged the requirement of supervision; and the First, Third, Sixth, Tenth, and District of Columbia Circuits hav[e] not yet expressly addressed the issue.").

> them. Necessarily, that work delays the resolution of other cases. *Fourth*, a requirement of court approval could force a risk-averse employer to demand employees file suit before settling, rather than settling pre-suit. That would have the impact of adding transaction costs to the settlement and clogging court dockets.

*Id.* at *4. Weighing these competing policy concerns is for Congress, not for this Court.

Second, and relatedly, though the policy considerations underlying the FLSA are undoubtedly weighty, the Court is unpersuaded that said concerns are "unique" such that the FLSA should be treated differently than other, similarly venerable rights of action.

> [The FLSA] was enacted to protect against "the evil of overwork" without statutorily required compensation. But surely, that evil is no greater than a case where a police officer gratuitously beats a suspect (42 U.S.C. § 1983), or a debt collector threatens children that their father will be imprisoned if he does not pay his bill (Fair Debt Collection Practices Act), or a consumer's credit is ruined because of a falsely reported debt (Fair Credit Reporting Act), or an employee is forced to submit to unwanted sexual advances or face termination (Title VII). These, and many others, are federal cases for a reason. They are all important, and the statutes and constitutional provisions under which they arise all protect unique interests based on unique policy considerations. For the courts to begin ranking the wrongs addressed by Congress where Congress has not would be to assume a legislative role.

*Barnhill v. Fred Stark Est.*, No. 15 CIV. 3360 BMC, 2015 WL 5680145, at *2 (E.D.N.Y. Sept. 24, 2015) (citation omitted) (quoting *Cheeks*, 796 F.3d at 206).

Here, the Parties do not request judicial approval of their settlement; in fact, their Joint Stipulation makes no mention of court approval. Instead, the Parties have stipulated to dismissal of this action. As neither precedent nor the FLSA's statutory text bar this course of action, Rule 41(a)(1)(A) prevents the Court from standing in the Parties' way.

## CONCLUSION

For the foregoing reasons, the Court **APPROVES** the Parties' Joint Stipulation (ECF No. 21) as follows:

1. The class and collective claims in the TAC are **DISMISSED WITHOUT PREJUDICE** as to the putative class and putative collective class members.

2. Plaintiff's individual claims in the TAC are **DISMISSED WITH PREJUDICE**.

3. Other than as specified in the Parties' settlement agreement, each Party shall bear its own attorneys' fees and costs.

4. The Court shall retain jurisdiction to enforce the Parties' settlement agreement, subject to any limits on the agreement's enforceability in light of the Supreme Court's FLSA precedents or otherwise.

The Court further **DISMISSES** Defendant's MTD (ECF No. 20) as **MOOT**. As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: March 29, 2024

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge